UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:18-cv-292

| | | |
|---|---|---|
| SARA E. WILLIS, and husband, BRIAN WILLIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **CLEVELAND COUNTY, NORTH CAROLINA,** | ) | |
| *sub nom.* **CLEVELAND COUNTY PUBLIC** | ) | |
| **HEALTH DEPARTMENT/ANIMAL CONTROL** | ) | |
| **SERVICES DIVISION; BRIAN EPLEY**, in his official | ) | **COMPLAINT** |
| capacity (only) as the Manger of Cleveland County; | ) | |
| **DOROTHEA WYANT**, individually and in her official | ) | (JURY TRIAL REQUESTED) |
| capacity as "Health Director" of the Cleveland County | ) | |
| Health Department; **SAM LOCKRIDGE**, individually | ) | |
| and in his official capacity as the former Cleveland | ) | |
| County General Services Director and Supervisor of the | ) | |
| Cleveland County Animal Control Division , | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

COMES NOW Sara E. Willis and husband, Brian Willis, the above-named Plaintiffs, by

and through undersigned counsel complaining of Defendants, and alleges and says as follows:

## PRELIMINARY STATEMENT

This is a civil action seeking actual, compensatory, and punitive damages, declaratory

and injunctive relief under the Constitution and laws of the United States for violations of

Plaintiff's Civil Rights, made actionable under *e.g.*, 42 U.S.C. §§ 1983 and 1985, and 2000(e) *et.*

*seq.*, including Title VII claims for Hostile Work Environment, Sexual Harassment, Intentional

Acts of Direct Discrimination and unlawful Disparate Treatment, along with claims for Violation

of the Wage & Hour Act, Negligent Hiring/Training/Supervision/Retention, Negligent, Reckless

1

and/or Intentional Infliction of Emotional Distress, Wrongful Termination, and Loss of Consortium under the laws of the State of North Carolina.

## JURISDICTION AND VENUE

This is an action seeking legal and equitable relief. The unlawful acts delineated herein occurred in Cleveland County, North Carolina, within the Western District of North Carolina. Plaintiffs are citizens and residents of Cleveland County, N.C., who claim substantial compensatory damages and punitive damages under both state and federal law. The defendants, were at relevant times hereto, public officers in Cleveland County, North Carolina, acting under color of state law. Jurisdiction is proper in this United States District Court, pursuant to 28 U.S.C. § 1331 (Federal Question), 1343 (Civil Rights), and 1367 (Supplemental Jurisdiction) and venue is proper in the United States District Court for the Western District of North Carolina. Plaintiffs present federal claims, including violations of *e.g.*, Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for unlawful discrimination, sexual harassment and hostile work environment. Plaintiffs assert their supplemental state law claims under North Carolina common law, the General Statutes of North Carolina, and the established public policy of the State of North Carolina, s*ee, e.g.*, N.C. GEN. STAT. § 143-422.2 (forbidding discrimination in employment on account of sex) and Chapter 95 (the Wage & Hour Act). The violations of federal law are asserted herein as independent causes of action and also serve as evidence of independent violations of North Carolina's law and established public policy. (To the extent that Plaintiffs may lack any adequate remedy for the wrongs of which they herein complain under state or federal law, Defendant Cleveland County is being sued for direct violations of the United States and North Carolina Constitutions).

2

**PARTIES:**

1.    Plaintiff, Sara E. Willis ("Sara Willis" or "Mrs. Willis") is a citizen and resident of Cleveland County, North Carolina.

2.    Sara Willis was employed by Defendant Cleveland County as a "Labor Crew Leader – Euthanasia Tech" in the Cleveland County Public Health, Animal Control Services Department, from May 1, 2016 through June 15, 2017.

3.    Plaintiff, Brian Willis ("Brian Willis" or "Mr. Willis") is a citizen and resident of Cleveland County, North Carolina, and was at all times hereto married to and is the husband of Plaintiff Sara E. Willis.

4.    Brian Willis was at times relevant hereto employed by Cleveland County as a Machine Operator III.

5.    Defendant Cleveland County, *sub nom.* Cleveland County Public Health, Department/Animal Control Services Division ("Cleveland County" or "the County"), is a political subdivision of the State of North Carolina, and body politic and corporate, within the meaning of N.C. Gen. Stat. §§ 153A-1 (3), and 10, in which capacity Defendant Cleveland County is capable of being sued in accordance with N.C. GEN. STAT. §§ 153A-11.

6.    Defendant Cleveland County employs approximately 1,000 people and provides a variety of services to the residents of Cleveland County, including but not limited to controlling stray domestic animals by means of its Animal Control Division, with the authority to appoint animal control officers (fixing their salaries, allowances and expenses in accordance with *e.g.,* N.C. GEN. STAT. §§ 67-30 and 153A-127 *et seq.*)

3

7.     Upon information and belief, at all times relevant to the matters complained of in this Complaint, Defendant Cleveland County has adopted, pursuant to N.C. GEN. STAT. § 153A-435, a plan of insurance covering the full dollar amount of the claims asserted herein and has thus waived its immunity from civil liability for the acts and/or failures to act, described herein; together or in the alternative, Defendant Cleveland County may have participated in a governmental risk pool and thus waived its sovereign immunity; additionally or in the alternative, Defendant Cleveland County may have adopted waiver of immunity guidelines which apply to the facts of the present case. Defendants have waived and/or are estopped from asserting any "immunity" otherwise available to the extent Defendants (or any of them) intentionally violated the law, conspired to deprive Plaintiffs, or any of them of known and established civil, statutory or constitutional rights under state or federal law, and/or acted corruptly, maliciously, or were grossly negligent and recklessly indifferent to the established rights of Plaintiffs as alleged herein; specifically, Plaintiffs affirmatively assert that Defendants: wantonly did that which a person of reasonable intelligence would know to be contrary to that person's duty under state and/or federal law, and which that person would reasonably foresee could cause injury or damage to Plaintiffs, citizens of the State of North Carolina and of the United States.

8.     Defendant, Brian Epley ("Epley"), upon information and belief, was at all times relevant hereto, a citizen and resident of Cleveland County, North Carolina, and is or was at times relevant hereto, the Manager of Cleveland County, a professional administrator who oversees the day-to-day operations of the Cleveland County government and manages the various County Departments, including the Health

Department and Animal Services; Defendant Epley is sued in his official capacity only, as the Cleveland County Manager, and is named in addition to Cleveland County to the extent necessary to effectuate the legal, injunctive or declaratory relief sought by Plaintiffs. Defendant Epley is being sued in his official capacity under federal law for violations of Plaintiffs' federal civil and constitutional rights, and under North Carolina law for all cognizable common law and/or statutory claims. (To the extent that Plaintiffs may lack any adequate remedy for the wrongs of which they herein complain under state or federal law, Defendant Epley is being sued in his official capacity for direct violations of the United States and North Carolina Constitutions). At all times relevant hereto, Epley acted under color of State law.

9.     Upon information and belief, Defendant Dorothea Wyant ("Wyant") is a citizen and resident of Cleveland County, North Carolina, and was at all times relevant to this action, the Health Director for the Cleveland County Health Department. Plaintiffs sue Defendant in her official capacity and also in her individual capacity. Defendant Wyant is being sued in her official capacity under federal law for violations of Plaintiffs' federal civil and constitutional rights, and under North Carolina law for all cognizable common law and/or statutory claims. (To the extent that Plaintiffs may lack any adequate remedy for the wrongs of which they herein complain under state or federal law, Defendant Wyant is being sued in her official capacity for direct violations of the United States and North Carolina Constitutions). At all times relevant hereto, Defendant Wyant acted under color of State law.

10.    Upon information and belief, Defendant Sam Lockridge ("Sam Lockridge" or "Defendant Lockridge") is a citizen and resident of Gaston County, North Carolina,

and was at all times relevant to this action, a former Cleveland County General Services Director and Supervisor of the Cleveland County Control Services Department and supervised the Landfill, the Animal Control Division and the Gun Range. Plaintiffs sue Defendant Lockridge in both his individual and official capacities. Defendant Lockridge is being sued in his official capacity under federal law for violations of Plaintiffs' federal civil and constitutional rights, and under North Carolina law for all cognizable common law and/or statutory claims. (To the extent that Plaintiffs may lack any adequate remedy for the wrongs of which they herein complain under state or federal law, Defendant Lockridge is being sued in his official capacity for direct violations of the United States and North Carolina Constitutions). At all times relevant hereto, Defendant Lockridge acted under color of State law.

11. Defendants are "persons" within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and may be sued for the claims presented in this action.

## FACTS:

12. Approximately two to three weeks after Mrs. Willis began her employment with the Defendant County, while six months pregnant, Mrs. Willis and her supervisor, Mr. Bowling, were called over to the County's landfill, to meet with Defendant Lockridge.

13. Plaintiff Sara Willis and her immediate supervisor, Mr. Bowling, worked primarily in the same building; the office of Defendant Lockridge was located in a building about four (4) miles away from where Mrs. Willis and Mr. Bowling usually worked. Plaintiff was not ordinarily required to interact directly with Mr. Lockridge very often. Defendant Lockridge, Mr. Bowling and Ms. Willis met in Defendant Sam

6

Lockridge's office. As the meeting came to an end, Mr. Bowling left the office. Mrs. Wills and Defendant Lockridge continued talking and eventually walked out of his office into the hallway. At that time, Sam Lockridge sexually assaulted Mrs. Willis by smacking her on the buttocks. Mrs. Willis was shocked by the inappropriate contact immediately turned to look at Defendant Lockridge, who was smirking and leering at her. Defendant Lockridge offered no excuse or apology for the offensive touching. This unwanted advance against Mrs. Willis was not welcomed, nor condoned by Mrs. Wills, who was dumbstruck, and who immediately and abruptly left the premises.

14. During Ms. Willis employment with Cleveland County, the chain of command for the County's Public Health Department/Animal Control Services Division was as follows: Plaintiff, Sara Willis, as a Labor Crew Leader/Euthanasia Technician reported to Mr. Tripp Bowling, Animal Control Supervisor II as her first supervisor in the chain of command, who reported to Defendant Sam Lockridge, Control Health Services as the second supervisor in the chain of command, who in turn, reported to Defendant Doretha Wyant, Health Director, the third supervisor in the chain of command; upon information and belief Defendant Dorthea Wyant reports directly to Defendant Eppley, who reports to Defendant Cleveland County, Plaintiffs' employer.

15. Upon information and belief, Mr. Tripp Bowling, Mrs. Willis' direct supervisor, took a leave of absence from and after approximately March 15, 2017 through the termination of her employment.

16. Zach Lovelace, Cleveland County employee, assumed the duties of Tripp Bowling (who was the immediate supervisor of Plaintiff Sara Willis), and acted

in the capacity of Animal Control Supervisor II, from on or around March 15, 2017 and for the duration of her employment with the Defendant County. All Animal Control Officers in the Defendant Cleveland County's Animal Control Department thereafter reported to Zach Lovelace as their immediate supervisor. However, Plaintiff, Sara Willis, and certain other Cleveland County Employees, however, were specifically instructed to report directly to Defendant Sam Lockridge, and not to Zach Lovelace. Sara Willis was then put in the position of having to report directly to Defendant Lockridge, including for any claims of sexual harassment or discrimination, who was expressly given direct supervisory control over Plaintiff Sara Willis and who continued to sexually harass and intimidate Mrs. Willis, effectively preventing her from reporting the conduct of Defendant Lockridge to her immediate supervisor.

17. Defendant Lockridge repeatedly attempted to hug Mrs. Willis and attempted to kiss her on the lips on numerous occasions, thereafter. Each time Defendant Lockridge attempted to make inappropriate physical contact with Mrs. Willis, she rebuffed his illicit advances and turned away to avoid his kiss.

18. While Defendant Lockridge was acting as the immediate supervisor of Plaintiff Sara Willis, she was required to perform the duties of "Rescue Coordinator", but without the benefit of the title or the salary commensurate with the job of Rescue Coordinator, which she ably performed. (The assigned salary of "Rescue Coordinator" was $38,000.00 per year; Mrs. Willis had assumed the duties of that position, but was only paid $28,000.00 and continued to be denied a commensurate raise, or formal promotion to that job, even after proving that she

8

was quite capable and qualified, during the last six months of her employment and despite her request for a promotion to the job she had been performing.

19. During the time that Defendant Lockridge was serving as the Mrs. Willis' direct supervisor, the Animal Control Division did not have regular monthly leadership meetings. Defendant Lockridge would call or text Mrs. Willis at all hours of the night on the pretense of asking work related questions, and made unusually frequent and unnecessary appearances at the animal shelter, the building where Mrs. Willis worked, perpetuating a hostile work environment and inflicting foreseeable emotional distress on Plaintiffs.

20. Ms. Willis was required to visit Defendant Lockridge at his office to report on work related matters; she was increasingly required to report to Defendant Lockridge during her last several months of employment, and was forced to be alone with Defendant Lockridge at his office (where she was isolated in a building about four (4) miles away from her regular work location), without the benefit of her co-workers or other witnesses present.

21. Mrs. Willis received reports from other female employees who had interacted with Defendant Lockridge, that Defendant Lockridge had touched them inappropriately on numerous occasions. Upon information and belief, such incidents had been reported and/or were known to Defendant Cleveland County, who had actual or constructive knowledge of such unlawful and discriminatory acts and practices on the part of Defendant Lockridge.

22. Upon information and belief, reports of Defendant Lockridge's improper, unlawful and inappropriate behaviors were observed, disregarded, dismissed

9

and/or ignored by Defendant Cleveland County.

23. Sara Willis was dissuaded from reporting the sexual harassment by virtue of the pervasive sexually hostile work environment, direct threats regarding her job and that of her husband, Plaintiff Brian Willis, as well as the general knowledge throughout Cleveland County regarding Defendant Lockridge's inappropriate past behavior, without serious reprimand or correction, despite reported complaints, along with the absence of a meaningful or effective reporting mechanism at the County Health Department/Animal Services Division through her chain of command or the Human Relations Department.

24. When Mrs. Willis, complained to Zack Lovelace (who had assumed the duties of her absent immediate supervisor), reporting that she had experienced unwelcome touching by Mr. Lockridge, Zack Lovelace advised Mrs. Willis that she should record Defendant Lockridge the next time she had a conversation with him, before she reported any misconduct, confirming her perception that without physical evidence of such ongoing harassment, her report would be futile and could result in her dismissal from employment.

25. Alternatively and/or additionally, the Cleveland County employees were discouraged and/or afraid to report the incidents of sexual abuse, harassment and discrimination for fear of reprisals or retribution by Defendants, and the reports or incidents of improper and illegal behavior were otherwise known to Defendant Cleveland County, who protected the individual Defendants, including Defendant Lockridge, and established, fostered, condoned and maintained the sexually hostile work environment perpetuated by Defendant Lockridge's known and

10

pervasive sexual harassment and his position of authority, autonomy, or control over and in Cleveland County's Public Health/Animal Control Department.

26.    In December, 2016, Defendant Lockridge asked Sara Willis if she would be interested in applying for a position with a program called "Target Zero" (a cat diversion program recommended to the Cleveland County Animal Shelter). He represented that the position would not be "on call" nor would there be any work on holidays, nights or weekends. Mrs. Willis said she was interested in the position.

27.    On or about December 29, 2016, Defendant Lockridge called Mrs. Willis to his office to begin the application process for the Target Zero project. During the process of completing the application, Defendant Lockridge asked Mrs. Willis to step around his desk to review the application on the computer. Defendant Lockridge proceeded to put his hand between her legs, right above the knee. Mrs. Willis immediately strode away from behind the desk and rebuffed Defendant Lockridge's inappropriate touching.

28.    Rita Ross, another employee of the Cleveland County Animal Shelter, was assisting Sam Lockridge in preparing the "Target Zero" application for Mrs. Willis and, upon information and belief, observed the incident, including the rebuff of the illicit touching and her abrupt extrication from Defendant Lockridge's illicit groping behind his desk. Upon information and belief, Ms. Ross, as a Cleveland County Employee and co-worker of Plaintiff Sara Willis, had the duty and obligation to report the harassment (whether directed at her personally or someone else, such as Plaintiff, Sara Willis) to a supervisor, any

11

other member of management or Human Resources at the Defendant Cleveland County, who thereby had actual or constructive knowledge of said unlawful and discriminatory conduct.

29. Mrs. Willis had also received reports from other female employees who had interacted with Defendant Lockridge, that Defendant Lockridge had touched them inappropriately on numerous occasions. Upon information and belief, such incidents had been reported and/or were known to Defendant Cleveland County, who had actual or constructive knowledge of such unlawful and discriminatory acts and practices on the part of Defendant Lockridge.

30. Upon information and belief, reports of Defendant Lockridge's improper, unlawful and inappropriate behaviors were observed, disregarded, dismissed and/or ignored by Defendant Cleveland County.

31. Throughout Mrs. Willis' employment when attending to daily work functions, such as delivering the mail to the landfill for posting, Defendant Lockridge repeatedly tried to hug and kiss Mrs. Willis who consistently remonstrated and rebuffed her Superior/County Official's unwanted advances.

32. Mrs. Willis had also received reports from other female employees who worked under Defendant Lockridge, saying that Defendant Lockridge had touched them inappropriately on numerous occasions. The female employees subordinate to Defendant Lockridge all expressed their fear that if they reported his conduct they would lose their jobs. Upon information and belief, such incidents had nonetheless been reported and/or were known to Defendant Cleveland County, who had actual or constructive knowledge of such unlawful and discriminatory

12

acts and practices on the part of Defendant Lockridge.

33.   Upon information and belief, reports of Defendant Lockridge's improper, unlawful and inappropriate behaviors were observed, disregarded, dismissed and/or ignored by Defendant Cleveland County.

34.   Upon information and belief, on or about June 1, 2017, Defendant Lockridge called Cleveland County employee, Rebecca Sitzes, and discussed the Plaintiffs' marital relationship.  Upon information and belief, Defendant Lockridge stated that Mrs. Willis needed to be "nice" to him if her husband, Brian Willis, wanted to keep his job.  Defendant Lockridge's threat of jeopardizing her husband's job as well as her own (and her family's means of financial support) was intended to be indirectly communicated to Mrs. Willis (through Rebecca Sitzes).  Mrs. Willis received Defendant Lockridge's indirect threat (through Rebecca Sitzes) and understood that being "nice" including not reporting directly to Cleveland County through any other channel, such as the Human Resources Department; Defendant Lockridge's threat, coupled with Defendant Cleveland County's perceived knowledge of and complicity in the sexually hostile work environment had the desired chilling effect of extorting her silence and subjected both Plaintiffs to the impossible dilemma of continuing to be subjected to the unwelcomed and rebuffed sexual advances and harassment, or losing all means of income for Plaintiffs' family.

35.   The persistent complaints and comments regarding Defendant Lockridge's unchecked sexual harassment, as made by Defendant Cleveland County co-workers directly to Plaintiffs, substantiated the known acts of sexual harassment

by Defendant Lockridge and the County's refusal to appropriately address such commonly known misconduct, perpetuating the sexually hostile work environment in the Cleveland County Public Health/Animal Control Department by and among County employees, including Plaintiffs, and their supervisors (including the individual Defendants.)

36. Defendants Lockridge and Wyant appeared to have a personal relationship that was observed by numerous County employees as well as members of the general public. Defendant Lockridge has stated a number of times, around numerous individuals, that he is "untouchable" and can do as he wishes within Cleveland County as a supervisor of County employees.

37. Ms. Wyant was seen to have suspended her independent judgment as to matters involving Defendant Lockridge, consistently deferring to Mr. Lockridge during discussions related to her sphere of authority and always "rubber-stamping" his decisions. It was "common knowledge" that Dorthea Wyant and Defendant Lockridge often took long lunch breaks together at Ms. Wyant's personal residence, as was observed by Ms. Wyant's neighbors.

38. Defendant Lockridge was publicly reported to have had "zipper problems" involving possible video evidence, including allegations that he was personally "involved" with Defendant, Dorothea Wyant, and may have had unsavory relationships with other women that Lockridge was said to have "power over."

39. By May 30, 2017, Mrs. Willis could no longer tolerate the hostile and abusive workplace environment and went to Mr. Lockridge's office to give notice of her intended resignation from employment with the County, and indicated that June

15 would be her "last day" of employment by the County; Defendant Lockridge again asked her to hug and kiss him. Sara Willis refused his overtures and left the office.

40. Upon her return to the animal shelter, Mrs. Willis was asked by fellow employee, Zac Lovelace, if she was "OK". Mrs. Willis explained to Zach Lovelace that Defendant Lockridge had again attempted to kiss her. Zach Lovelace then warned Mrs. Willis regarding Defendant Lockridge's unwanted advances, that if "she didn't behave" then her husband's job could be in jeopardy. Mrs. Willis, understood that "behaving" including not reporting directly to Cleveland County through any other channel, such as the Human Resources Department, and such warning had the chilling effect of extorting her silence, subjecting both Plaintiffs to the impossible dilemma of tolerating Defendant Lockridge's unwelcomed and rebuffed sexual advances and harassment, or losing all means of income for Plaintiffs' family.

41. Mrs. Willis then called County Human Resources Director Allison Mauney ("Ms. Mauney") to arrange an "exit interview", believing such an interview would be the only safe way to voice her complaints regarding Defendant Lockridge.

42. On Thursday, June 1, 2017, Sara Willis formally reported the sexual harassment to which she had been routinely and continuously subjected by Defendant Lockridge throughout her employment, in accordance with the written terms of the County's purported "Harassment Policy". Sara Willis openly told Ms. Mauney of the Human Resources Department that she had been subjected to

unwelcome conduct of a sexual nature by Mr. Lockridge. Mrs. Willis advised Ms. Mauney that Mr. Lockridge had "smacked" her on her buttocks soon after she began employment by the County, possibly around the end of June of 2016, and explained that on many occasions when Mrs. Willis had gone to Mr. Lockridge's office for work-related reasons, he had repeatedly and persistently tried to kiss and hug her, despite her resistance and avoidance of his advances. Her complaints were received without comment by the Human Resources Officer, until Mrs. Willis apprised Ms. Mauney that she had "proof ' of Mr. Lockridge's unwelcome sexual conduct, having kept an audio recording of her meeting with Mr. Lockridge on May 30, 2017.

43.     Ms. Mauney then instructed Ms. Willis that she would be placed "on a leave-of-absence with pay, so that the County could conduct a prompt and thorough investigation of her claims"; Mrs. Willis agreed to continue her employment in order to assist with the investigation.

44.     During their conversation, Ms. Mauney assured Mrs. Willis that her husband's job was secure, notwithstanding the evidence of the inappropriate sexual behavior (and indirect threats) of Defendant Lockridge. However, at no time did anyone from the HR Department or the County (including Brian Willis' direct supervisors), ever speak with Mr. Willis either about what had been reported by his wife, nor about the security of his position with the County.

45.     On June 7, 2017, Ms. Mauney contacted the Mrs. Willis, asking whether she would reconsider and rescind her resignation and return to work. Ms. Mauney said that Mr. Lockridge was not "currently" working for the County while an

investigation was being conducted; Ms. Mauney suggested that Mrs. Willis could resume her job, but gave no assurances that Defendant Lockridge would not retain his authority or be back working for the County after the investigation was completed. Mrs. Willis' requested some time to consider the matter.

46.    Mrs. Willis was then instructed to "call in sick" rather than working while the Employer's "investigation" of Defendant Lockridge was underway.  Mrs. Willis was away from work from Thursday, June 1, 2017 through Wednesday, June 7, 2017, at the request of the Employer, and upon information and belief was charged for personal time off or "sick days" as Mrs. Willis had been so instructed.

47.    On or about June 12, 2017, the Mrs. Willis, attended an Animal Control meeting, after which she met with Public Health Director Wyant and asked whether the position of "Animal Control Supervisor II", currently held by Mr. Bowling (who was then out on a leave-of-absence) would be available, and expressed her interest in the position.

48.    Defendant Wyant told Mrs. Willis that Mr. Bowling was expected to return to work soon and, as a result, that the position would not be available. (contrary to representations by Defendant Lockridge to the effect that Mr. Bowling's absence would likely be permanent).

49.    Prior to her scheduled last day of June 15, 2017, the Defendant County offered to allow Mrs. Willis to rescind her resignation; Defendant Cleveland County refused to give Sara Willis any assurance that Defendant Lockridge would not continue his employment with the County in a supervisory position; refused to offer to

17

promote or compensate her at the rate and level paid to other (male) employees for performing the duties of a "Rescue Coordinator"; and refused to consider Sara Willis for the open position of "Animal Control Supervisor II", for which Mrs. Willis was duly qualified, all as requested, after returning to work following her formal report of sexual harassment.

50. When Mrs. Willis specifically asked Ms. Mauney of the Human Resources Department about whether Defendant Lockridge would continue to be employed as her supervisor, she was told only that he was not currently working for the County at that time (upon information and belief he was on a fully paid suspension pending a hearing on the substantiated investigation of misconduct as reported by Mrs. Willis) and was told that they "could not discuss Sam Lockridge at this time".

51. Upon information and belief, the County's "investigation" into the sexual misconduct allegations against Defendant Lockridge (including interviews with approximately twenty (20) employees), independently confirmed that Defendant Lockridge had apparently engaged in repeated acts of "unacceptable personal conduct", as formally reported by Mrs. Willis.

52. The Defendant County scheduled a pre-dismissal conference with Lockridge for June 16, 2017, the day after completion of the notice period worked by Plaintiff Sara Willis, although the County's investigation was completed and the Plaintiffs' charges of sexual harassment were substantiated, prior to the termination of her employment.

53. Upon information and belief, Defendant Lockridge continued in his employment

18

with Cleveland County until after Mrs. Willis had returned to work at the County's request and through the expiration of her 'notice period', through June 15, 2017.

54. Upon information and belief, Defendant Lockridge was allowed to quietly resign from his employment with the County, sometime after June 15, 2017, without consequence or discipline for the numerous and now documented accounts of sexual misconduct repeatedly and continually perpetrated against numerous County employees, including Plaintiffs, which had been actually or constructively known and perpetuated by the County for decades.

55. Brian Willis had been employed with Defendant Cleveland County since December 16, 2016. From and after the termination of Plaintiff Sara Willis's employment with the Defendant County, the hostile work environment continued at the landfill, where Brian Willis had worked under the supervision of Defendant Lockridge. Plaintiff Brian Willis continued to feel threatened in his employment as a result of his wife's having reported the sexual harassment and discrimination by Defendant Lockridge, which was then under investigation by the E.E.O.C.

56. Certain employees at the landfill remained in contact with Defendant Lockridge and posted pictures including Defendant Lockridge on social media, such that Defendant Lockridge was perceived to still have influence in the County Departments which he had previously supervised.

57. On or about October 11, 2017, Plaintiff Sara Willis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), a copy of which is attached hereto and incorporated herein by reference, labeled

"Exhibit 1";

58. Plaintiff Brian Willis continued to work under conditions of the hostile work environment fostered and maintained by the Defendant County, and perceived that he was being scrutinized for any reason that might justify termination from employment and no remediation of the hostile work environment was undertaken, nor was any assurance that he would not be subjected to retaliation for his wife's reporting ever communicated, although upon information and belief, employees were instructed not to discuss the reasons for Defendant Lockridge's voluntary resignation, or the charges of misconduct reported by his wife, Plaintiff Sara Willis, while he remained employed by the Defendant Cleveland County, who opposed the Charge of Discrimination then pending with the E.E.O.C.

59. While the Charge of Discrimination was unresolved, on or about January 26, 2018, Brian Willis could no longer continue to work in the pervasive hostile work environment that he was being subjected to, feeling like he was "walking on eggshells" at his place of employment and felt compelled to resign his employment as Machine Operator III with Defendant Cleveland County, because of communicated threats that he would "lose his job" as a result of his wife's complaints of sexual harassment by Defendant Lockridge and the pending Charge of Discrimination, which did not appear to have been properly addressed by his employer, the Defendant County.

60. On or about July 24, 2018, the EEOC issued a Notice of Right to Sue (issued at the request of Sara Willis), more than 180 days having passed without the completion of an investigation or other resolution having been provided by the

EEOC; a copy of said Notice of Right to Sue is attached hereto and incorporated herein by reference, labeled "Exhibit 2". This lawsuit under Title VII is filed in this federal court within 90 days of Plaintiffs' receipt of said notice.

## PLAINTIFFS FIRST CAUSE OF ACTION
### (TITLE VII CLAIMS – 42 U.S.C. § 2000e et seq.)

61.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

62.     Defendants were responsible for providing employment to Plaintiffs without discrimination or abridgement on account of sex, and for the hiring, training, supervision and retention of the individual Defendants. Defendant Cleveland County (through the Cleveland County Animal Control Services Department and the individual Defendants, its supervising employees, officers or agents) acted under color of State law.

63.     Plaintiff Sara Willis is a member of a protected class, in that said Plaintiff is a female; Plaintiff Brian Willis is a member of a protected class, in that said Plaintiff is a male and is the spouse of Plaintiff Sara Willis; both were entitled to be employed by Defendant Cleveland County without being subjected to sexual harassment, discrimination on account of sex, a sexually hostile work environment or retaliation for the possible reporting of any such events or conditions.

64.     Plaintiffs suffered adverse employment actions as aforestated. The offending conduct was: (1) unwelcome; (2) based on plaintiff s gender; (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) imputable to the employer.

21

65. The Defendant County's proffered reasons for Plaintiff's termination (including Defendant's explanations given in response to Plaintiff's Charge of Discrimination as provided to the EEOC) are not worthy of credence, the real reason being intentional discrimination against Plaintiffs based on sex, the pervasively hostile work environment, and/or in retaliation for reporting such claims of sexual harassment.

66. As a result of the prohibited discrimination, Mrs. Willis, a County employee suffered a tangible employment action at the hands of her supervisors, Defendants Lockridge and Wyant, including, a significant change in employment status with significantly different responsibilities, (reassigning her the duties of a "Rescue Coordinator"); the failure to promote Sara Willis to the "Rescue Coordinator" job that she had been performing *de facto* (and a decision that caused a substantial change in benefits by requiring additional work without additional commensurate compensation); offering to reinstate her to the job of Labor Crew Leader - Euthanasia Tech, without providing any compensation for or recognition of the additionally assigned duties of "Rescue Coordinator" that were outside her formal job description; failing to promote her to the open position of "Animal Control Supervisor II"; all without providing any assurance that Defendant Lockridge would not be returning to a position of supervisory authority within the County and concealing the fact (or effective date) of his resignation, believed to have been given on or about June 7, 2017, but voluntarily accelerated by Defendant Lockridge to be effective on or about June 15, 2017.

**Hostile Work Environment**

67. Defendants failed to provide Plaintiffs with employment conditions and relationships

22

where they could safely work, free from discrimination on account of sex.

68.   Upon information and belief, Defendant Cleveland County had long-standing knowledge of Mr. Lockridge engaging in inappropriate sexual misconduct and employee relationships, but Defendant Lockridge had simply been previously transferred by the County to another location, and was allowed to continue in his position of authority and employment with the County, affirming Plaintiffs' belief that any formal report of such misconduct against Lockridge would result in retaliation and/or be futile, as such behavior had been and would likely continue to be ignored and/or condoned.

69.   Defendant Cleveland County disregarded the past reports of misbehavior from Cleveland County employees and the public, and knowingly placed Mr. Lockridge in a position of oversight as to Mrs. Willis and others in the Public Health Department/Animal Control Services Division of the Defendant County, negligently recklessly or intentionally exposing Plaintiffs, and others to unlawful discrimination, sexual harassment and a hostile work environment.

70.   The conduct and communication of the Defendant County, by and through Plaintiffs' superiors, Defendants' agents, representatives, and employees, beginning in approximately June of 2016 and continuing through their respective terminations (January of 2018), discriminated against plaintiffs, substantially interfered with their employment, and created an ongoing intimidating, hostile, and offensive work environment in violation of e.g., 42 U.S.C. § 2000e-2.

71.   The "hostile work environment" was created and/or maintained by Defendants, and/or was subjectively perceived by Plaintiffs, as set forth herein (and about which Plaintiff

Sara Willis complained) and amounts to discrimination in the conditions of Plaintiffs'
employment.

72.     Defendants are liable for the hostile work environment because their conduct had the
purpose or effect of unreasonably interfering with Plaintiffs' work performance,
creating an intimidating, hostile, or offensive working environment.

73.     Plaintiffs' workplace was permeated with discriminatory intimidation, harassment,
ridicule, threats and insult (including physical assault on and the inappropriate
touching and advances toward Mrs. Willis) and the condition that pay [for female
employees performing the same job as male employees] was not equal.    The
intimidation and insult continued (refusing to equalize pay for Plaintiff Sara Willis,
ignoring her complaints, and assigning work that was suitably performed without
commensurate compensation) and constituted disparate treatment that was
sufficiently severe or pervasive to alter the conditions of the Plaintiffs'/victims'
employment (by imposing sexually inappropriate behavior; by reassigning duties; by
refusing to promote Plaintiff, Sara Willis; by refusing to fill vacancies or posting the
jobs for which Plaintiff Sara Willis had applied and/or was given assignments; by
failing or refusing to document, discipline or remediate known, substantiated policy
violations; and ultimately, by facilitating Plaintiffs' terminations (actual and
constructive) while covering up and denying reported abuses and discrimination in
employment.

74.     Plaintiffs' workplace should be viewed as hostile or abusive, from both the
reasonable persons' standpoint, as well as the victims' subjective perception,
considering the totality of the circumstances alleged herein.    The above-recited

24

incidents of harassment occurred in concert and with a regularity that can reasonably be termed pervasive; moreover, Plaintiffs subjectively perceived their work environment to be abusive, and reported the objective and subjective facts to the Defendant County, who already had actual or constructive knowledge thereof, yet failed to address or correct such hostile environment.

75. The Defendant County is subject to vicarious liability to Plaintiffs, as victimized employees for an actionable hostile environment created by the County's supervisors who had immediate (or successively higher) authority over Plaintiffs as County employees.

76. No tangible employment action was taken to discipline Defendant Lockridge, despite actual or constructive knowledge of Plaintiff's supervisors' offensive behavior, threats to the employment of both Plaintiffs and the discriminatorily abusive work environment.

77. Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq., prohibits discriminatory treatment in employment on the basis of a person's sex, and prohibits a hostile workplace environment based upon such discrimination (which is also the stated public policy of the State of North Carolina).

78. Plaintiff Sara Willis's sex was a motivating factor in Defendants' adverse employment actions as further demonstrated by: 1) the frequency and pervasive nature of Defendant's discriminatory conduct; 2) the severity of the discrimination; 3) the physical abuse and sexual harassment toward a pregnant woman, as well as the humiliating and offensive nature of being subjected to continued discrimination and threats of retaliation, as well as the cover-up and/or disregard of Defendant

Lockridge's proven sexual harassment, allowing Lockridge to resign on his own terms following the termination of employment of Plaintiff Sara Willis; and 4) the unreasonable interference with Plaintiffs' work performance and advancement (rejecting valid complaints about unequal treatment, unequal pay, lack of promotions, and disregard of grievances, which reports and requests for appropriate correction were overlooked and disregarded by Plaintiffs' supervisors and the County.

79. The conduct and communications by Defendants, and/or its agents, representatives and employees, substantially interfered with the employment of Plaintiffs and created an intimidating, hostile, and offensive work environment in violation of state and federal law.

80. Defendants' conduct further violated the law in that Defendant failed to provide Plaintiffs with employment conditions and relationships where they could safely work, free from verbal and physical harassment, discrimination or threats of retaliation on the basis of Mrs. Willis's sex (female), including her related medical condition (pregnancy).

81. Defendants failed to properly respond to valid complaints of illegal activity, including unlawful discrimination in the workplace in the falsification, concealment and/or condonation of Defendant Lockridge's unlawful, substantiated harassment and discrimination.

82. Defendants failed to take appropriate action when it knew or should have known of the discrimination and the widespread hostile environment they had created, fostered, tolerated and/or allowed.

83. Defendants failed to properly train, monitor and supervise, or to discharge, suspend,

26

reprimand, or otherwise discipline workers and supervisors who either perpetrated, acquiesced in, or ignored the employer's sex-based discrimination; and, Defendants failed to implement and enforce an effective anti-discrimination policy among its management, staff and employees.

## Unlawful Retaliation

84. Title VII also "prohibits retaliation by a private employer against an employee because of opposition to "any practice made an unlawful employment practice' by Title VII." (See e.g., Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011) (quoting 42 U.S.C. § 2000e3(a)).

85. As shown hereinabove, Plaintiffs engaged in protected activities (reporting sexually hostile conduct, unequal pay, discriminatory compensation decisions and refusals to promote Plaintiff Sara Willis when qualified and eligible) and threatening the employment of both Plaintiffs in retaliation for the possible reporting or refusal to accept or tolerate such unlawful sexual harassment and discrimination.

86. The Defendant County acted adversely against Plaintiff, refusing to address or correct the disparate and discriminatory acts, conduct, and policies being enforced, and continuing to discriminate against Plaintiff on the basis of her sex; failing to fairly compensate Plaintiff while increasing Plaintiff's workload; and constructively terminating Plaintiff's employment after completing a substantiated investigation supplanted by a voluntary resignation of the perpetrator of such abuses, effective only after Plaintiff Sara Willis had completed her notice period, without providing any valid assurance that she could safely be reinstated in her job without fear of continuing discrimination in the conditions of her employment, including the hostile

27

work environment.

87. There was a causal connection between Plaintiff's protected activity and Defendants' adverse employment decisions and actions, including Plaintiff's disparate employment status, including Defendant's interruption and termination of Plaintiff Sara Willis's employment, failing to fairly compensate or promote Plaintiff, despite reassignment of Plaintiff's duties with significantly different responsibilities; and said decisions caused a significant change in Plaintiff's benefits, including unequal wages, failure to provide secured leave without pay, instead instructing her to take "sick days" or personal time following her report of unlawful and discriminatory conduct.

88. Defendant retaliated against Plaintiffs for speaking out about the disparate treatment, sexual harassment and discrimination by e.g. discontinuing and concealing disciplinary proceedings against a substantiated sexual harasser, further perpetuating the hostile work environment toward female employees and Plaintiff Brian Willis as Plaintiff, Sara Willis's husband, and discouraging her (and others) from reporting unlawful and discriminatory practices, having a chilling effect on established rights under federal and state law (including the First Amendment of the United States Constitution).

89. Plaintiff Sara Willis's sex (female) was a substantial and/or motivating factor in the Defendant County's unlawful and discriminatory employment practices, including the decisions not to fairly compensate and/or promote Sara Willis and to threaten the termination of Plaintiffs' employment; alternatively and/or additionally, Plaintiff's reporting and grieving specific instances of unlawful and abusive treatment toward female employees (including herself), coupled with or independent of her complaints

28

of unequal disparate and discriminatory treatment in employment conditions, were substantial, motivating factor(s) in Defendant County's adverse employment decisions in:

a. Instructing Plaintiff to take "sick leave" pending an ineffectual investigation;

b. Refusing to correct reported sexually hostile behavior, and instead, accepting Defendant Lockridge's voluntary resignation, effective after Plaintiff's employment had expired;

c. Refusing to fairly compensate Plaintiff Sara Willis, despite her qualifications and performance in accordance with the employer's demands and assignment of additional duties as a "Rescue Coordinator"

d. Refusing to promote, or even post and fill the open position of Animal Control Officer II, in contravention of established promotion policies and a vacated position, despite Plaintiff Sara Willis's expressed interest, qualifications and performance, retaining an absent male employee;

e. Placing Defendant Lockridge in a position of direct supervision over Plaintiff Sara Willis, exposing her to his continued harassment and sexual advances, without filling the vacancy created by the absence of her immediate supervisor, despite actual or constructive knowledge of his unlawful proclivities;

f. Systematically increasing Plaintiff's workload, including the duties of another job, without providing the commensurate title, benefits or compensation as provided to male employees performing the same job; and,

g. Refusing to correct or provide any remedial conditions of employment, safeguards or assurances, while offering to reinstate Plaintiff in her previous undercompensated position, in response to a substantiated investigation concerning the very reasons for Plaintiff's notice and her reports of unlawful discrimination in the workplace, terminating her employment under continuing, unchecked and intolerable conditions and her reports of disparate treatment, based on an impermissible classification, to wit: her sex, and/or as a result of her having reported such unlawful treatment and conditions in employment.

29

## Intentional Acts of Direct Discrimination/Disparate Treatment

90.   Defendants (or certain of them as set forth herein) engaged in intentional acts of direct discrimination and disparate treatment of Plaintiffs on account of the sex of Sara Willis, as set forth herein above, including but not limited to: refusing to correct reported sexually hostile or discriminatory behavior; ignoring Plaintiff's reports of disparate treatment and/or concealing the results of the investigation and disregarding, or foregoing disciplinary action contrary to espoused policy; refusing to fairly compensate or promote Plaintiff Sara Willis, despite her *de facto* appointment and assignments of work as a "Rescue Coordinator", as well as her qualifications and expressed interest in the vacant position of "Animal Control Supervisor II"; and, effectuating or procuring the termination of Plaintiffs' employment on the basis of sex or in retaliation for the reporting thereof, as specifically detailed hereinabove.

91.   Defendants are liable for a discriminatory failure to promote Plaintiff Sara Willis because: 1) Plaintiff Sara Willis was a member of a protected group (as a female); 2) Plaintiff Sara Willis performed and applied for the specific position of "Rescue Coordinator" and was qualified and interest in the vacant position of Animal Control Supervisor II; 3) she was qualified for that position; and, (4) The Defendant County rejected her application under circumstances giving rise to an inference of discrimination.

92.   Defendant Employer further unlawfully discriminated against Plaintiff by paying her less money for the Defendant job as her male counterparts, and upon information and belief, by offering to reinstate her to her former position including the additional duties of "Rescue Coordinator" without commensurate job title or compensation, and

30

with no assurance of remediation of the hostile work environment.

93.    The aforesaid conduct of Defendant was "willful" within the meaning of North
Carolina law and Title VII, since Plaintiff's supervisors and Defendant's Human
Resources and management staff intentionally and knowingly created, tolerated,
condoned, ratified, aided and/or abetted the aforesaid discriminatory and pervasively
hostile work environment imposed on Plaintiff in the Defendant County's workplace;
despite constructive or actual knowledge of and even after Plaintiff reported the
specifically objectionable conduct, and her perception of hostility, Defendant failed
and refused to take any action to correct the situation(s) and allowed Plaintiff Sara
Willis to work her notice (based on her report of sexual abuse, harassment and
discrimination), discouraging any such reports by Plaintiffs or other females, and
perpetuating the perceived hostile work environment.

94.    After Plaintiff expressly informed the Defendant County of the unlawful
discrimination and hostile work environment, Defendants took no (or insufficient)
action to give or secure to Plaintiff her rights, privileges and immunities under the
law.   Furthermore, not only did Defendant fail, but Plaintiff's supervisors and
Defendant's Human Resources personnel expressly failed or refused to inform the
proper authorities of the events reported to them, or to properly respond and mete out
discipline, as was their duty under the law and public policy of the United States and
the State of North Carolina, as well as the County's espoused Anti-Harassment or
Anti-Discrimination policies.

95.    As a direct and proximate result of said unlawful employment practices and blatant
disregard for Plaintiff's rights and sensibilities, in addition to the indignities of sexual

31

harassment and discrimination, as well as a hostile work environment, Plaintiffs have lost and will continue to lose substantial income including, but not limited to, wages, social security, pension, seniority and fringe benefits, and other benefits due.

96.     As a direct and proximate result of said unlawful employment practices, Plaintiffs suffered and suffered from "Somatization Disorder", a recognized and diagnosable medical/psychological condition believed to have been caused, aggravated and/or exacerbated by the stress and hostile work environment fostered and maintained by Defendants; Plaintiffs continue to suffer the embarrassment of termination of employment following reported unlawful employment practices, emotional trauma, anxiety, depression, sleeplessness and/or other mental or emotional conditions capable of being diagnosed by qualified medical professionals.

97.     As a further direct and proximate result of said unlawful employment practices, Plaintiffs have suffered the indignity of discrimination, the invasion of their rights to privacy and to be free from discrimination, harassment, a hostile work environment and great humiliation, which has been manifested in physical illness and emotional distress.

98.     As a further direct result of said unlawful employment practices, Plaintiffs have suffered mental anguish, outrage, anxiety and a diminished ability to contribute support themselves and their family and a diminution in the ability to provide medical care and health benefit insurance, harm to employability and earning capacity, painful embarrassment among friends and co-workers, damage to good reputation, disruption of personal life, and diminished enjoyment of the ordinary pleasures of everyday life.

99.     Plaintiffs are entitled to legal, equitable, and declaratory relief for sex discrimination,

harassment and or retaliation under Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (as amended) (hereinafter "Title VII") and is entitled to recover statutory and/or common law damages in an amount believed to exceed $25,000.

## SECOND CAUSE OF ACTION
### (Violation of The Equal Pay Act of 1963 - 29 U.S.C. § 206(d) and the Lilly Ledbetter Fair Pay Act of 2009)

100.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs and incorporate the same herein by reference.

101.    Upon information and belief, the Defendant County, as Plaintiffs' employer, paid different wages to employees of opposite sexes; Plaintiff, as a female Labor Crew Leader/Euthanasia Technician, held a job that required equal skill, effort, and responsibility as a male Labor Crew Leader/Euthanasia Technician, and/or in performing the duties of a female "Rescue Coordinator" which required equal skill, effort, and responsibility as a male "Rescue Coordinator"; and such jobs were actually performed under similar working conditions.

102.    The Equal Pay Act prohibits Defendant's sex-based wage discrimination between men and women who performed jobs that required substantially equal skill, effort, and responsibility under similar working conditions. Upon information and belief, Defendant Cleveland County discriminated in the payment of wages between its male and female employees, in hourly or annual pay, and also with respect to bonuses, benefits, insurance, and/or pension, 401(k), and retirement contributions.

103.    Defendant's unequal payment of wages was not made pursuant to any seniority system, merit system, system which measures earnings by quantity or quality of

33

production; or a differential based on any other factor other than sex.

104. Defendants discriminated against Plaintiffs because Plaintiff Sara Willis filed a complaint, grievance, and/or reported to her superiors and/or the Human Resources Department, the failure and refusal of Defendants to equalize the pay between male and female employees (including Plaintiff's wages), despite the known and obvious disparity and discriminatory practices. Such practice continued unabated until the effective termination of Plaintiff Sara Willis, and is believed to be continuing even today.

105. Under the Lilly Ledbetter Fair Pay Act of 2009, each paycheck that contains discriminatory compensation is a separate violation regardless of when the discrimination began, recognizing the "reality of wage discrimination".

106. In accordance with Section 706(e) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(e)) as amended, Defendants' unlawful employment practices occurred, with respect to discrimination in Plaintiff Sara Willis's compensation in violation of this title, when the discriminatory compensation decision or other practice was adopted, when Plaintiff became subject to the discriminatory compensation decision or other practice, and when Plaintiff was affected by application of a discriminatory compensation decision or other practice, including each time her wages, benefits, or other compensation was paid in an unequal amount compared to males in the same positions and/or performing the same actual job duties as Plaintiff Sara Willis.

107. Defendant Cleveland County is liable to Plaintiff Sara Willis in the amount of her unpaid, unequal wages, including overtime compensation, if applicable, and in an additional equal amount as liquidated damages. In addition to any other relief to

which said Plaintiff may be entitled, the Defendant County's liability has accrued, and Plaintiff Sara Willis is entitled to, *inter alia*, the recovery of back pay for up to two (2) years preceding the filing of this action.

108. Plaintiffs are entitled to a judgment for such additional and other legal or equitable relief as may be appropriate to effectuate the purposes of the Equal Pay Act, including without limitation employment, reinstatement, promotion, and the payment of wages lost, and in additional equal amounts as liquidated damages, plus a reasonable attorney's fee to be paid by Defendants, and costs of the action under the Equal Pay Act, 29 U.S.C. § 206(d).

### THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983)**

109. Plaintiffs repeat, reiterate and reallege each and every allegation in the preceding paragraphs and incorporate the same herein by reference.

110. Plaintiffs bring this Claim pursuant to 42 U.S.C. § 1983 for violation of rights protected by federal law, including the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, applicable to the actions of the County Defendants described hereinabove (as individuals or corporate entities acting under color of state law).

111. Section 1983 states that "(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…"; Defendants are liable under Section 1983 for causing Plaintiffs, citizens of the United States, for subjecting Plaintiffs to the

deprivation of their constitutional rights.

112.    Under 42 U.S.C. § 1983, the County Defendants are liable to Plaintiffs individually and in their official capacities as agents of Cleveland County, North Carolina, and/or as official policy makers, officers or principles of such agents/employees, supervisors, or animal control officers, acting under color of state law.

113.    The County Defendants violated Plaintiffs' federal Constitutional rights including, but not limited to their rights to free speech on matters of public concern, liberty, property, equal protection, due process/law of the land provisions (both procedural and substantive) under the federal and state constitutions, and/or as made applicable to the States under the 14th Amendment to the U.S. Constitution.

114.    The County Defendants violated the aforementioned constitutional protections by the acts, omissions, policies, procedures, customs, usages and/or conduct, set forth herein.

115.    Defendant Cleveland County, in addition to being liable/responsible for Defendants Cleveland County Public Health Animal Control Services Department, Brian Epley, Dorothea Wyant, and Sam Lockridge, and the conduct of other employees or agents of the Animal Control Department (whether directly and/or vicariously under the doctrines of *respondeat superior*, agency, or as public policy makers) also violated the United States Constitution (federal law and the laws and public policy of the State of North Carolina) and acted under color of State law in the following respects:

  a.    By allowing Defendants to use their positions in the Cleveland County Public Health Animal Control Services Department to foster a sexually hostile work environment;

  b.    By the unlawful and selective enforcement of the laws and ordinances of Cleveland County and abusing their authority to appoint animal control officers

36

(fixing their salaries, allowances and expenses in accordance with *e.g.,* N.C. GEN. STAT. §§ 67-30 and 153A-127 *et seq.*);

c. By failing to provide adequate hiring, training and/or supervision of the individual County Defendants with regard to providing equal and non-discriminatory employment, and a safe work environment free of sexual harassment and sexual hostility, and by engaging in reckless indifference as to whether wrongful conduct occurred, and with regard to the enforcement of the applicable laws, ordinances, regulations or policies;

d. By failing to take actions required or available under said laws and ordinances after having actual or constructive knowledge of unlawful activities and a hostile work environment, including discipline or remediation after actual knowledge and a substantiated investigation of the unlawful conduct reported by Plaintiff, Sara Willis;

e. By otherwise failing to adequately supervise and control a known sexual predator, including ratifying or condoning violations of applicable laws and ordinances and policies (stated public policy and written County policy) by Defendants Lockridge and/or Wyant; and

f. By failing to adopt and enforce adequate policies and procedures in place for policing and monitoring a workplace free of sexual hostility, as entrusted by the State of North Carolina.

116. To the extent Defendant's actions consisted of private conduct, such acts nonetheless constitutes state action under the facts and circumstances herein presented, by virtue of being fairly attributable to the State and Cleveland County, because Defendants acted together with and obtained significant aid from local and state officials and/or because their conduct is otherwise chargeable to Defendants acting as a County of the State of North Carolina; there was a sufficiently close nexus with the State so that Defendants' private action in furtherance of an agreement to perform unlawful acts, or lawful acts in an unlawful manner was material to the deprivation of Plaintiffs' rights, such that Defendants' conduct may be fairly treated as that of the State itself.

117. Defendant Eppley so insinuated himself into a position of interdependence with the state actors whose conduct was shown to violate the First and Fourth Amendment of

37

the United States Constitution (as incorporated in the Fourteenth Amendment), Defendants Lockridge and Wyant, and jointly engaged as state officials in ratifying, condoning and/or disregarding prohibited actions, obtaining significant aid and authority from the State of North Carolina or state officials; Defendants invoked the aid of state officials to take advantage of known and established procedures under the law regarding non-discrimination or sexual harassment in the workplace, by using the systems created by the State and County whereby state officials are charged with handling and addressing sexual harassment, the hostile work environment and the safe reporting thereof, by protected communication by Plaintiff Sara Willis of a matter of public concern. Defendants were all therefore acting 'under color' of law for purposes of 42 U.S.C. § 1983, as willful (and knowing) participants in joint activity with Defendant Cleveland County, North Carolina, and their respective agents.

118. The violations of generally accepted laws, regulations, policies, enforcement, custom and practice in this situation were direct and foreseeable results of inadequate supervisory and training policies and practices on the part of Cleveland County and Cleveland County Animal Control Services Department. Upon information and belief, the actions of Defendants were calculated to and did deprive Plaintiffs of rights and privileges protected by state and federal law, including 42 U.S.C. § 1983.

119. The violations of Plaintiff's Constitutional rights, abusing generally accepted laws, enforcement customs and practices in this situation were direct and foreseeable results of unlawful conduct, policies and practices on the part of Defendants.

120. Upon information and belief, the actions of the individual Defendants were pursuant to a policy, custom, practice and/or procedure of the Cleveland County Animal

38

Control Department, its policy making officials, including Defendant Wyant, which were calculated to and did deprive Plaintiff of rights and privileges protected by state and federal law, including 42 U.S.C. § 1983, or were made by the individual Defendants as official policy makers or decision-makers of Defendant Cleveland County.

121.  The affirmative decisions of the individual Defendants, as well as the alleged omissions were made both personally and as individual policymaking officials on behalf of the County, and manifest deliberate indifference to the rights of citizens, including Plaintiffs.  The individual Defendants spoke with final policymaking authority for the County concerning the alleged unlawful activity which caused the particular constitutional or statutory violation at issue.

122.  As a proximate and foreseeable result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have suffered a loss of their property, physical injury, severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation, trust in the rule of law, and their peace of mind in working in a safe (and non-hostile) work environment, and in lawfully reporting sexual abuse and discrimination to their employer and its agents.

123.  As a proximate and foreseeable result of the Defendants' violations of Plaintiffs' civil and constitutional rights, Plaintiffs have been caused to suffer significant harm and damage (physical, financial, and emotional) and are entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of Twenty-five Thousand Dollars ($25,000), the costs of this action, and reasonable attorney's fees from

Defendants pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**(42 U.S.C. § 1985)**

124.  Plaintiffs repeat, reiterate and reallege each and every allegation in the preceding paragraphs and incorporate the same herein by reference.

125.  Upon information and belief, Defendants Lockridge, Wyant, presumably in collaboration with Defendants Greer and Eppley (as said defendants' liability may be made to appear) agreed and acted in concert, thereby conspiring for the purpose of impeding, hindering, obstructing, or defeating, in some manner, the due course of justice in North Carolina, with the intent to deny to Plaintiffs (as County employees, and also as taxpayers and citizens of Cleveland County, North Carolina, and the United States) their civil rights under the law, the application and enforcement of the laws, regulations and policies (including the stated public policy of North Carolina and the written policies of the County) and depriving them of their Constitutional guarantees to due process and the "law of the land" and/or to injure Plaintiffs, by unlawfully abusing Defendants' authority in knowing or reckless violation of Plaintiffs' civil and constitutional rights, and entitlement to the equal protection of the laws, all in violation of 42 U.S.C. § 1985.

126.  To the extent the individual Defendants' actions were outside the scope and authority of their employment or agency for the County, and/or to the extent that the willful, intentional and/or unlawful nature of the County Defendants' actions constitute a waiver of (or exception to) the doctrine of "intra-corporate immunity", then and in such event, said individual Defendants and each of them acted jointly in concert with

each other and with the other Defendants, and committed the overt acts set forth herein, which were done in furtherance of an unlawful agreement under color of state law.

127. The unlawful agreement between Defendants (as said individual defendants' liability may be made to appear), coupled with the acts taken in furtherance thereof, constituted a conspiracy which resulted in the deprivation of Plaintiff's constitutional rights, actionable under 42 U.S.C. §§ 1983 and 1985.

128. Based on discussions with each other, and as communicated to Plaintiff Sara Willis, Defendants Lockridge, Wyant (presumably with the consent of and/or in collaboration with Defendants Greer and Eppley) agreed, then jointly, and in furtherance of their unlawful agreement and conspiracy acted in concert to violate the law, ordinances and declarations of public and County policy regarding the proper investigation, discipline and remediation due to and arising from substantiated reports of sexual harassment, hostile work environment and discriminatory treatment of Plaintiffs.

129. As a proximate and foreseeable result of the said individual Defendants' conspiracy to violate Plaintiffs constitutional rights, and acts taken in furtherance of said unlawful conspiracy (as said individual defendants' liability may be made to appear), Plaintiffs have suffered a loss of property, physical injury, severe emotional distress, severe mental anguish and anxiety, depression, embarrassment, humiliation, loss in trust in the rule of law, and their peace of mind with respect to having a safe (and non-hostile) work environment at the County, and in lawfully reporting sexual abuse and discrimination to their employer and its agents.

41

130.    As a proximate and foreseeable result of said individual Defendants' conspiracy to violate Plaintiffs' civil and constitutional rights (as their culpability may be shown), Plaintiffs have been caused to suffer significant harm and damage (physical, financial, and emotional) and are entitled to all equitable and legal relief afforded by the law, including an injunction, as well as compensatory and/or punitive damages in an amount believed to be in excess of Twenty-five Thousand Dollars ($25,000), the costs of this action and reasonable attorney's fees from Defendants pursuant to 42 U.S.C. § 1988.

## SUPPLEMENTAL STATE LAW CLAIMS

### PLAINTIFFS' FIFTH CAUSE OF ACTION
**(Violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*)**

131.    Plaintiff Sara Willis repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth and alleged herein.

132.    Defendants (specifically including the Defendant Cleveland County) were Plaintiffs' employer, as defined by Chapter 95 of the North Carolina General Statutes, the "Wage and Hour Act". See, N.C.GEN.STAT. § 95-25.2(5).

133.    By charging Mrs. Willis with "sick days" (as opposed to "a leave-of-absence with pay"), the County depleted Mrs. Willis wages in the form of "sick pay" or "personal time" that was otherwise owed to the employee on the next paycheck following her separation from employment, in accordance with the North Carolina Wage and Hour Act. See e.g., N.C.GEN. STAT. §§ 95-25.2(16), 95-25.7 and 95-25.22 et seq.

134.    Mrs. Willis has not received confirmation as to whether she was paid and/or charged for personal time ("sick days") from June 2, 2017 through June 7, 2017, but she followed her Employer's instructions and "called in sick" on those days, as she was

42

told to do by Ms. Mauney.

135.    Plaintiff Sara Willis received copies of time sheets for certain pay periods for which
she received paychecks which had been falsified (reporting time entries that preceded
her actual employment by the County Defendant), and/or which appear to bear her
forged signature.  Plaintiff Sara Willis kept accurate time sheets for the work she
performed and never submitted or signed time sheets for any time that she had not
actually worked for the County Defendant, and she never signed any such fabricated
and/or forged time sheets, which upon information and belief were fraudulently
prepared, submitted and signed by unknown agents or employees of the Defendant
County.

136.    Defendants violated the provisions of the applicable laws under the Wage & Hour
Act by failing and refusing to properly calculate and pay wages (not reasonably in
dispute) to Plaintiff in the form of Plaintiff's accrued "sick pay" (or "personal time
off"), vacation time and benefits, severance (or other forms of calculation) as defined
by the Wage & Hour Act of North Carolina.  See, N.C.GEN.STAT. § 95-67 ("Payment
to separated employees"), 95-25.12 ("Vacation pay"), 95-25.22 ("Recovery of unpaid
wages").

137.    Defendants further deprived Plaintiff of wages due under the Wage and Hour Act by
Defendant's repeated failure and refusal to pay Plaintiff her due wages, having had
the obligation to equalize pay for those in comparable positions, in refusing to
provide benefits and timely requested promotion and/or fair compensation, in failing
to repay Plaintiff's accrued "sick pay" (or "personal time off") payments or other
compensatory benefits due on or before the next regular payday following Plaintiff's

43

termination, and in failing to offer the same level of compensation and benefits provided to similarly classified and qualified (male) employees in the capacity of "Rescue Coordinator", in accordance with the representations, employment agreement and/or policies and practices of Defendant County due to Plaintiff on the first regular payday after the amount had become calculable under N.C.GEN.STAT. § 95-25.7.

138. As a result of the violations of the North Carolina Wage and Hour Act (which were not made in good faith and were known by the County to be violations), Defendant is liable to Plaintiff as an employee affected in the amount of her unpaid wages, unpaid vacation time, or unpaid amounts due under the employment agreement and/or the applicable law (including incentive payments and other compensation for labor or services rendered by Plaintiff as determined on a time, task, job or other basis of calculation), as the case may be, plus interest at the legal rate set forth in N.C.GEN.STAT. 24-1, from the date each amount first came due, as well as liquidated damages (in an amount equal to the amounts found to be due), plus costs and attorney's fees, as allowed by N.C.GEN.STAT. § 95-25.22.

## PLAINTIFF'S SIXTH CAUSE OF ACTION
### (Negligent Hiring, Training, Supervision and Retention)

139.  The Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs and incorporate the same herein by reference.

140. Upon information and belief, Defendants (particularly including Defendant Cleveland County) negligently failed to train and/or supervise its employees and supervisors, (particularly including Defendants Lockridge, Wyant and Human Relations employees, such as Ms. Mauney) sufficiently to meet the minimum standards for in-

44

service training for supervisors of a County Department, including responding to, and investigating known or reported claims of sexual harassment, sex-based discrimination and a hostile working environment, as well as in communicating discipline or other remedial measures, in breach of the duty of care reflected in applicable state and federal law.

141. Upon information and belief, Defendants Cleveland County and its Animal control Department and/or Defendants Greer, as its Director and Defendant Eppley as the County Manager, negligently failed to train and/or supervise the individual Defendants, sufficiently to meet the minimum standards for such Department's officers, agents or employees, supervisors and Human Relations employees, including responding to, and investigating known or reported claims of sexual harassment, sex-based discrimination, giving proper promotions and wages, and a hostile working environment, as well as in communicating discipline or other remedial measures, in breach of the duty of care reflected in applicable state and federal law.

142. Upon information and belief, Defendants failed to properly screen applicants, train and/or supervise persons for positions involving supervision and handling known or reported instances of *e.g.*, sexual harassment, employment discrimination, hostile work environment and wage and hour compliance, and/or failed to properly train and supervise said personnel (specifically including but not limited to the individual defendants), while authorizing and encouraging them to assess, investigate confront, discipline, and to properly effectuate and communicate remedial measures, including to Plaintiffs, in violation of the known rights of employees, including Plaintiffs, under the laws and Constitution of the United States and of North Carolina.

45

143. Further, Defendants knew or should have known of the inadequacy of the training, and of the individual defendants' inability to properly execute their aforestated duties arising out of or relating to allegations of (or known facts and circumstances indicative of) unlawful discrimination, unfair wage practices and a sexually hostile work environment (including sexual harassment). Nonetheless, Defendants retained the services of the individual defendants, and exposed the public, specifically Plaintiffs, to said negligently hired, trained, supervised, and/or retained employees.

144. As a result of the negligence of Defendants (including Cleveland County and its Animal Control Department) in hiring, training, supervising, and retaining the individual defendants (particularly Defendants Lockridge and Wyant and individuals in the County's Human Relations Department such as Ms. Mauney), the Plaintiffs were injured and damaged, and are entitled to compensatory damages in an amount believed to be in excess of $25,000..

## PLAINTIFFS SEVENTH CAUSE OF ACTION
### (Infliction of Emotional Distress)

145. The Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs and incorporate the same herein by reference.

### Negligent Infliction of Emotional Distress:

146. Defendant Cleveland County was negligent in its failure to properly train and/or supervise its employees, including Plaintiff's superiors and the individual supervisors and management personnel identified hereinabove.

147. The Defendant County engaged in negligent conduct in that it:

    a. failed to notice or observe the above-recited unlawful employment practices;

46

b. neglected to take effective action to stop the disparate treatment and discrimination after said Defendant knew, or should have known, that its conduct was wrongful and would continue to cause Plaintiffs severe emotional distress;

c. failed to properly calculate and pay salary and compensation due to Plaintiff Sara Willis, despite having paid said Plaintiff's counterparts and comparators more for the same work, and after having actual and constructive notice of the disparity, as well as the reported oversight, discrimination, errors and defalcation; and

d. neglected to offer Plaintiff a promotion, although Plaintiff applied for and was qualified for promotion under the Defendant's promotion policy and job performance.

148. Defendant was negligent in other ways, subject to further investigation and discovery, as may be shown at the trial of this action. As a result of the negligent actions of the Defendant County, Plaintiffs did, in fact, suffer severe emotional distress, including recognized and diagnosable medical/psychological conditions (such as "Somatization Disorder", anxiety, depression, or other recognized emotional distress) believed to have been caused, aggravated and/or exacerbated by the stress and hostile work environment fostered and maintained by the Defendant County (causing more than mere temporary fright or anxiety, disappointment or regret), as may be recognized and diagnosed by medical providers and/or qualified expert witnesses).

149. As a result of Defendant's negligence, Plaintiff has suffered the indignities of humiliation, embarrassment, mental suffering and/or emotional distress, severe emotional harm, all to her detriment and damage in a sum in excess of Twenty-five Thousand Dollars ($25,000.00).

47

**Reckless and/or Intentional Infliction of Emotional Distress**

150. Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

151. The aforesaid actions by the individual Defendants (particularly including Defendants Lockridge and/or Wyant) constitute extreme and outrageous conduct indicating a reckless indifference to the likelihood that such conduct would cause severe emotional distress.

152. As a result of the aforestated willful and intentional actions of said individual Defendants (as their culpability may be shown), Plaintiffs did, in fact, suffer severe emotional distress, including recognized and diagnosable medical/psychological conditions (such as "Somatization Disorder", anxiety, depression, or other recognized emotional distress) believed to have been caused, aggravated and/or exacerbated by the acts of intentional sexual harassment, discrimination, creating and imposing conditions of a hostile work environment disregarded, condoned (or concealed from) the Defendant County (causing more than mere temporary fright or anxiety, disappointment or regret), as may be recognized and diagnosed by medical providers and/or qualified expert witnesses.

153. The individual Defendants' liability is direct and vicarious and the Defendant County's liability vicarious, to the extent that their or its agents' actions were all condoned and/or ratified by Defendant's Directors, Executive Officers and/or official policy makers.

154. As a proximate result of Defendants' intentional infliction of emotional distress, Plaintiffs have suffered severe emotional harm and mental distress, embarrassment,

48

humiliation, and pain and suffering, all to their damage in a sum in excess of Twenty-five Thousand Dollars ($25,000.00).

### PLAINTIFFS EIGHTH CAUSE OF ACTION
#### (Wrongful Discharge)

155. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the above paragraphs and incorporate the same herein by reference.

156. The Defendant County discriminated in its "at will" employment of Plaintiff Sara Willis, on account of her sex ("female").

157. Sex and/or the retaliation for reporting unlawful sexual harassment, discrimination and/or a sexually hostile work environment was a substantial motivating factor in the decisions of Defendants in instructing her to take "sick leave" pending the investigation of her complaints; in paying her (and other females) less than their male counterparts for the same work; in in refusing proper promotions or wages (although Plaintiff Sara Willis was a qualified, eligible applicant under the law, the public policy of North Carolina and the employer's stated policies); in systematically increasing her workload to include the duties of a "Rescue Coordinator" without commensurate job title or wages; threatening and ultimately terminating Plaintiffs' employment following reports of such unlawful activities and conditions, in accepting Plaintiffs' notice of termination having miscommunicated and/or failed to implement proper discipline or remedial measures following Plaintiff Sara Willis's substantiated charges of sexual harassment, discrimination, unequal pay and/or a pervasively hostile work environment.

158. The law and stated public policy of North Carolina prohibits discrimination in

employment on account of sex. (See, e.g., N.C.GEN.STAT. §§ 95-151, 95-241, and 143-422.2; *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 178, 381 S.E.2d 445, 449 (1989) ("violation of federal law… offend[s] the public policy of North Carolina") approving and adopting language from, *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, disc. rev. denied, 314 N.C. 331, 333 S.E.2d 490 (1985) ("no right to terminate …a contract [at will] for an unlawful reason or purpose that contravenes public policy"); see also, 42 U.S.C. § 2000e, et seq.; U.S. CONST. AMEND. XIV).

159. Plaintiff suffered the adverse employment actions (previously stated instances of discrimination culminating in termination of her employment) contrary to both state and federal law and in violation of North Carolina's established public policy prohibiting the discharge of an at-will employee when the employee's sex (or reporting of unlawful actions and/or conditions) is a substantial factor in the decision. (Plaintiffs further incorporate by reference all allegations and claims set forth hereinabove in Plaintiff's federal claims as if fully set forth herein in further support of her supplemental state law causes of action.)

160. Plaintiffs suffered substantial injury and damages (economic, emotional, and social) proximately caused by unlawful sexual discrimination, and the hostile work environment created, condoned, and tolerated by the Defendant County, in the form of lost wages, social security, pension, seniority and fringe benefits, continued employment, comprehensive compensation including base compensation, salary, bonuses, incentive pay, vacation pay, and/or other benefits due her as a result of the employment relationship and/or under the contract of employment.

161. As a further direct and proximate result of said wrongful discharge and unlawful

employment practices, Plaintiffs have suffered the indignities of retaliation, humiliation, embarrassment, mental suffering and/or emotional distress.

162.   As a further direct result of said breach and/or unlawful employment practices, Plaintiffs have been damaged in their ability to support themselves and their family, to protect their health with medical insurance (and access to medical services), harm to employability and earning capacity, painful embarrassment among friends and coworkers, damage to good reputations, and disruption of their personal life, which included long term employment with the Defendant County.

163.   As a result of wrongful discharge, Plaintiffs have been injured and damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

## PLAINTIFFS NINTH CAUSE OF ACTION
### (Loss of Consortium)

164.   The Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs and incorporate the same herein by reference.

165.   Prior to the events and dates set out above Plaintiffs enjoyed a happy marriage and had a united family.  The Plaintiffs enjoyed the love and affection of each other and reasonably anticipated many more years of conjugal happiness.

166.   As a direct result of the joint and concurrent intentional, reckless, and/or negligent acts of the Defendants named herein, Plaintiffs were injured as set forth above and were unable to function in their full capacities as marriage partners and have thereby been deprived of the society, companionship, sexual fulfillment and affection to which they were entitled without interference from Defendants.

51

167. As a result of Defendants' conduct, Plaintiffs suffered a loss of consortium and are entitled to recover compensatory damages in an amount believed to be in excess of $25,000.

## PLAINTIFFS TENTH CAUSE OF ACTION
### (Punitive Damages)

168. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

169. The aforesaid unlawful conduct was "willful" since Defendants' supervisory and management staff intentionally and knowingly created, tolerated, condoned, ratified, aided and/or abetted the aforesaid sexual harassment, discrimination, disparate treatment, pervasively hostile work environment and/or retaliatory motivated discharge from employment on account of sex.

170. The individual Defendants Lockridge and Wyant, and the Defendant County through Defendant's officers, directors, or managers, jointly and severally participated in or condoned outrageous, willful, wanton, malicious, and egregiously wrongful conduct, as aforesaid (including the harassing interference with, hostile environment surrounding, and wrongful termination of Plaintiffs' employment), which said Defendants intended, knew, or should have known was reasonably likely to result in injury, damage, or other harm and which was in flagrant and reckless disregard of the rights of the Plaintiffs and others.

171. Said Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiffs.

172. Punitive damages are available for a violation of Title VII of the Civil Rights Act of 1964 when a complaining party demonstrates that a Defendant engaged in a

52

discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. (See, 42 U.S.C.S. § 1981a(b)(1).) Defendant's conduct was undertaken with "malice" and "reckless indifference" because of the employer's actual knowledge that it may have been acting in violation of federal law, particularly after Plaintiff complained of and reported such violations.

173. As Defendants' extreme and outrageous conduct toward Plaintiffs was improperly motivated, and was intentional, willful, wanton, and egregiously wrongful, Plaintiffs are entitled to recover punitive damages in an amount to be determined by the trier of fact as a traditional form of relief offered in the courts of law (both state and federal), in accordance with federal statutory law and/or Chapter 1-D of the North Carolina General Statutes.

### PLAINTIFFS ELEVENTH CAUSE OF ACTION
### (Claim for Declaratory Relief as Against All Defendants)

174. The allegations of the preceding paragraphs are incorporated herein by reference as if fully set forth.

175. The United States District Court for the Western District, as a court of record within its respective jurisdiction, and as a court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Plaintiffs hereby seek such a declaration to have the force and effect of a final judgment or decree, reviewable as such, declaring the rights, status, and other legal relations of all the parties hereto, in accordance with 28 U.S.C. § 2201 (and/or N.C.GEN.STAT. § 1-253).

53

176. The parties are all person whose rights, status or other legal relations are affected by a statute, ordinance, policy, custom, usage, or contract/conditions of employment. Plaintiffs seek to have determined questions of construction or validity of the actions, omissions and/or policies of Defendants, and/or of Cleveland County's Insurance Policy as to coverage for indemnification or defense of Plaintiffs' claims, and arising under the documents, pleadings, administrative regulations, laws, statutes, ordinances, employment conditions or contracts related to the parties and the actions set forth herein.

177. Plaintiffs seek a declaration of rights, status, or other legal relations with respect to their liberty, property, statutory and constitutional rights, privileges, immunities, and authorities, as to each party hereto, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiffs, Sara E. Willis and husband, Brian Willis respectfully requests that this Court provide the following equitable and legal relief:

1. A judgment against Defendants jointly and severally (as their liability may be made to appear) awarding all applicable legal and equitable relief available under Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e et seq.), including an award of appropriate (non-duplicative) compensatory damages (including back pay, future earnings, front pay (in lieu of reinstatement and reimbursement) for all income and fringe benefits lost as a result of unlawful conduct by Defendants, plus interest, so as to render Plaintiffs whole for unlawful discrimination based on sex (including hostile workplace claims and claims for retaliatory discharge); for permanent injunctive relief as may be

54

appropriate, prohibiting Defendants from further acts of sexual harassment, discrimination, or maintenance of a hostile work environment; and mandating reinstatement of Plaintiffs' employment (in lieu of front pay, as may be elected by Plaintiff following a trial by jury) for Defendants' unlawful discrimination based on Plaintiff Sara Willis's sex in violation of Title VII and 42 U.S.C. § 2000e et seq., under Plaintiffs' First Cause of Action;

2. A judgment against Defendant Cleveland County awarding Plaintiff Sara Willis all (non-duplicative) compensatory damages, statutory damages, and liquidated damages, in such amount as she is found to be entitled by the finder of fact, plus costs, interest and attorney's fees as allowed by law, together with all equitable relief deemed to be necessary and sufficient in the discretion of the court and as authorized by law for said Plaintiff's claims for Violation of the Equal Pay Act of 1963 – 29 U.S.C. §206(b) (as amended by the Lilly Ledbetter Fair Pay Act of 2009) under Plaintiffs' Second Cause of Action;

3. A judgment against Defendants jointly and severally (as their liability may be made to appear) awarding all applicable legal and equitable relief available under 42 U.S.C. §§ 1983, including an award of appropriate (non-duplicative) compensatory damages as a result of unlawful conduct by Defendants so as to render Plaintiffs whole for the deprivation of rights guaranteed by the United States Constitution and laws, plus interest, and for permanent injunctive relief as may be appropriate, prohibiting Defendants from further unlawful and discriminatory acts, including an award of the costs of this action and reasonable attorney's fees from said Defendants pursuant to 42 U.S.C. § 1988, under Plaintiffs' Third Cause of Action;

55

4. A judgment against the individual Defendants, jointly and severally (as their liability may be made to appear) awarding all applicable legal and equitable relief available under 42 U.S.C. §§ 1985, including an award of appropriate (non-duplicative) compensatory damages as a result of unlawful conduct by Defendants so as to render Plaintiffs whole for the conspiracy to deprive Plaintiffs of rights guaranteed by the United States Constitution and laws, plus interest, and for permanent injunctive relief as may be appropriate, prohibiting Defendants from further unlawful and discriminatory conspiracy, agreements and/or acts in furtherance thereof, including an award of the costs of this action and reasonable attorney's fees from said Defendants pursuant to 42 U.S.C. § 1988, under Plaintiffs' Fourth Cause of Action;

5. A judgment against Defendant Cleveland County, for all compensatory damages, statutory damages, and liquidated damages, in such amount as Plaintiff Sara Willis is found to be entitled by the finder of fact, plus costs, interest and attorney's fees as allowed by law, together with all equitable relief deemed to be necessary and sufficient in the discretion of the court and as authorized by law for Plaintiff Sara Willis's claims for the Defendant County's Violation of the North Carolina Wage and Hour Act (General Statutes Chapter 95) under Plaintiff's Fifth Cause of Action;

6. A judgment against Defendant Cleveland County awarding all applicable legal and equitable relief available including an award of appropriate (non-duplicative) compensatory damages proximately caused by said Defendant's negligent, hiring, training, supervision and/or retention under Plaintiffs' Sixth Cause of Action;

7. A judgment against Defendants jointly and severally (as their liability may be shown) for compensatory damages in such amount as Plaintiff is found to be entitled by the finder of

fact, together with interest for her claims for Defendant's Negligent Infliction of Emotional Distress or Reckless/Intentional Infliction of Emotional Distress, as properly found by a jury under Plaintiff's Seventh Cause of Action;

8. A judgment against Defendant Cleveland County (as Plaintiffs' employer) for compensatory damages in such amount as Plaintiffs may be found to be entitled by the finder of fact, together with interest for her North Carolina common law claim for Wrongful Discharge from employment under Plaintiffs' Eighth Cause of Action;

9. A judgment against Defendants jointly and severally (as their liability may be shown) for compensatory damages in such amount as Plaintiffs may be found to be entitled by the finder of fact, together with interest for their claims for Loss of Consortium as properly found by a jury under Plaintiff's Ninth Cause of Action;

10. A judgment against Defendants as a result of their respective liability and culpability (as their liability may be shown) due to egregiously wrongful, willful, intentional and/or malicious conduct, for exemplary or punitive damages in such amount as may be determined in the discretion of the jury in accordance with applicable federal law, and the statutory, constitutional, and/or common laws of the State of North Carolina under Plaintiff's Tenth Cause of Action;

11. Plaintiffs are entitled to the judgment of the court, declaring the rights and other legal relations of all interested parties, and seek such declaration, whether or not further relief is or could be sought. Plaintiffs hereby seek such a declaration to have the force and effect of a final judgment or decree, reviewable as such, declaring the rights, status, and other legal relations of all the parties hereto, in accordance with 28 U.S.C. § 2201 (and/or Chapter 1, Article 26 of the North Carolina General Statutes (N.C.GEN.STAT. § 1-253)

and Rule 57 of the Federal Rules of Civil Procedure, declaring the rights and duties of the parties to this action under Plaintiffs' Eleventh Cause of Action;

12. Plaintiffs hereby demand a trial by jury on all issues so triable;

13. Plaintiffs pray for the costs of this action and a reasonable attorney's fee to be awarded to Plaintiffs as the prevailing party and as allowed by applicable state or federal law; and

14. Plaintiffs demand all other available, additional or alternative relief that the United States District Court deems to be appropriate and just.

This the 17th day of October, 2018.

**GRAY, LAYTON, KERSH, SOLOMON,**
 **FURR & SMITH, P.A.**

_/s/ William E. Moore, Jr._
**William E. Moore, Jr.**
NC State Bar # 9962
516 South New Hope Road
P.O. Box 2636
Gastonia, NC 28053
Telephone: (704) 865-4400
Direct Dial: (704) 790-6001
Facsimile: (704) 866-8010
Email: bmoore@gastonlegal.com
***Attorney for Plaintiffs Sara Willis and Brian Willis***

58